**In the Matter of the RISK LEVEL DETERMINATION OF C.M.**

No. C7–97–1722.

Court of Appeals of Minnesota.

June 2, 1998.

Considered and decided by WILLIS, P.J., and KLAPHAKE and MULALLY,* JJ.

## OPINION

WILLIS, Judge.

Relator C.M.[1] appeals from his classification as a level III sex offender. We conclude that the interpretation of Minn.Stat. § 244.052, subd. 1(4) (1996), under which relator was classified as a sex offender is an unconstitutional violation of due process and therefore reverse.

## FACTS

In March 1993, relator C.M. stayed in Waseca for two days with C.B., his ex-girlfriend. On March 4, C.B. evicted relator. Late that evening, relator returned, intoxicated, to C.B.'s apartment. When C.B. refused to let him in, relator broke down the door. Using physical force, relator ordered C.B. to keep quiet and stay in the apartment. Relator stated that he intended to sleep on C.B.'s living room couch, but he instead entered her bedroom, where he had sex with her. According to the presentence investigation report, relator told police that the sex was consensual, "to calm [C.B.] down." C.B. told police that she did not consent.

Relator was arrested the next morning and charged with first-degree burglary, criminal damage to property, two counts of criminal sexual conduct in the first degree, and one count of criminal sexual conduct in the second degree. In exchange for dismissal of the remaining charges, relator pleaded guilty to burglary in the second degree, admitting in court to breaking down C.B.'s door and restraining her against her will but not to having sex with her. The presentence investigation report gave an "official version" of events quoted verbatim from the complaint but also noted, under "comments/recommendations," the differing version relator had

John M. Stuart, State Public Defender, Jenneane Jansen, Assistant State Public Defender, Legal Advocacy Project, Minneapolis, for relator C.M.

Hubert H. Humphrey III, Attorney General, Alan Held, Assistant Attorney General, for respondent.

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

1. Data used in risk level determination proceedings are not subject to public disclosure. Minn. Stat. § 244.052, subd. 3(c) (Supp.1997). Because this appeal is from a confidential proceeding, we maintain the anonymity of the relator although, because of our disposition of this case, we do not reach issues involving the use of private data.

given to police. Relator was sentenced to 58 months in prison.

Relator's criminal record dates to 1979, when he was convicted in North Dakota of felony gross sexual imposition and aggravated assault, apparently arising from separate incidents. The record contains no official descriptions of the details of these offenses. Between 1980 and 1990, relator had 13 convictions of theft and burglary and one of simple robbery.

In March 1997, Jeffrey Brown, the psychologist who recommends post-incarceration placement for all sex offenders held in Minnesota prisons, recommended to the End of Confinement Review Committee (ECRC) that relator be classified as a level III sex offender, the level indicating the highest risk of reoffense. Brown based his recommendation on relator's long history of alcohol and drug addiction and failed attempts at treatment and on his score on the Sex Offender Screening Tool (SOST) developed by the Department of Corrections. Relator's SOST score treated the March 1993 offense involved here as a sex offense. Brown also spoke to a North Dakota prosecuting attorney about the details of relator's earliest offenses, which he testified affected his assessment of relator's risk level. Brown made no attempt to obtain official documents regarding these convictions. The ECRC, of which Brown is a member, concurred with Brown's recommendation.

Relator appealed the ECRC's classification to an administrative law judge (ALJ). Relator argued (1) that he did not qualify as a sex offender under the notification statute because he had not been convicted of a sex offense, (2) that he should not have been classified as level III, and (3) that several aspects of the procedure violated his due process rights. The ALJ concluded that he lacked jurisdiction to consider relator's due process claims but that relator had adequately preserved them for appeal. At the review hearing, Brown testified that in classifying the 1993 offense as a sex offense, he had assumed the truth of C.B.'s statement in the complaint that the sexual intercourse with relator had not been consensual.

The ALJ concluded that relator was a sex offender under the plain meaning of the notification statute. He also determined that the evidence Brown obtained from the North Dakota prosecutor "must be disregarded as unreliable and uncorroborated hearsay." But the ALJ decided that Brown could legitimately classify the 1993 incident as a sex offense because relator's claim that C.B. consented "is absurd and contrary to all the facts even as presented by [relator]." The ALJ upheld relator's level III classification, and relator appealed to this court.

In October 1997, relator fulfilled the conditions for release in mid-November from the halfway house in which he then resided. Both the ALJ and this court denied relator's motion for a stay of community notification pending appeal. The notice police prepared for distribution to residents of the Loring Park neighborhood in Minneapolis states that "the individual who appears on this notification has been convicted of a sex offense that requires registration" and, under "description of offense," states that "[o]ffender burglarized a female acquaintance's home and forced her against her will in sexual acts." We reverse.

### ISSUES

1. Is this court required to strike respondent's appendix as outside the record?

2. Did the ALJ err in determining that relator is a sex offender within the meaning of the notification statute?

3. Did application of the statute to relator, who was charged with, but not convicted of, a sex offense, violate constitutional guarantees of due process?

### ANALYSIS

**I. Motion to Strike**

■ The state has compiled an appendix comprising a number of scientific and popular articles on sex offender recidivism and the effects of sex offenses on victims, and including a model notification policy promulgated by the Minnesota Board of Peace Officer Standards and Training, in support of its argument on appeal that the notification statute is constitutional. Relator moves to strike

the entire appendix on the ground that the contents are outside the record.

■ We have found no case law addressing whether new evidence may be introduced in an appeal from an administrative agency where the agency lacked jurisdiction to consider the question to which the evidence pertains. In general, new evidence may be introduced on appeal if it is documentary, essentially uncontroverted, and is not offered in support of a reversal. *In re Objections and Defenses to Real Property Taxes,* 335 N.W.2d 717, 718 n. 3 (Minn.1983). We have stated that statistical and social scientific evidence that otherwise meets this test may be introduced on appeal to illuminate, "in the manner of a Brandeis Brief," the social context for a decision, particularly where the appellate decision will have widespread social, economic, or legal consequences. *Economy Fire & Cas. Co. v. Iverson,* 426 N.W.2d 195, 202 (Minn.App.1988), *rev'd in part on other grounds,* 445 N.W.2d 824 (Minn.1989). The supreme court has accepted the belated introduction of a government-prepared statistical report because "we could refer to such a report in the course of our own research, if we were so inclined." *In re Estate of Turner,* 391 N.W.2d 767, 771 (Minn.1986).

In support of his motion to strike, relator relies on decisions involving attempts to introduce evidence pertaining to the facts of the individual cases rather than to matters of public record relevant to broad policy issues. *See, e.g., Richardson v. Employers Mut. Cas. Co.,* 424 N.W.2d 317, 319–20 (Minn.App. 1988), *review denied* (Minn. Aug. 24, 1988). The evidence offered here, while not necessarily uncontroverted, is documentary,[2] and we conclude that it may properly be introduced in this court in support of a constitutional argument now raised for the first time because the agency below lacked jurisdiction to consider it. Relator's motion to strike is therefore denied. But we also note that we are entitled to take judicial notice of the problem of sex offender recidivism in any event and that the model notification policy is irrelevant to determination of this case.

## II. Interpretation of Notification Statute

■ This case arises under the sex offender community notification act, which is codified at Minn.Stat. § 244.052 (1996 and Supp. 1997). The statute defines "sex offender" and "offender" as "a person who has been convicted of an offense for which registration under section 243.166 is required." *Id.* at subd. 1(4). It provides that at least 90 days before an offender's release from prison, an end-of-confinement review committee shall convene to determine the offender's risk level. *Id.* at subd. 3(d). The statute requires that the offender be notified of the time and place of the ECRC's meeting and grants the offender "a right to be present and be heard at the meeting." *Id.* "An offender assigned * * * to risk level II or III * * * has the right to seek administrative review of [the ECRC's] risk assessment determination" but on review has "the burden of proof to show, by a preponderance of the evidence, that the end-of-confinement review committee's risk assessment determination was erroneous." *Id.* at subd. 6(a), (b). On administrative review, the offender has the right to "a reasonable opportunity to prepare for the hearing," to appointment of counsel, to provide evidence and supporting witnesses, and to cross-examine adverse witnesses. *Id.* at subd. 6(b).

The notification statute empowers the law enforcement agency in "the area where the sex offender resides, expects to reside, is employed, or is regularly found," to disclose to the public any information that the agency deems "relevant and necessary to protect the public and to counteract the offender's dangerousness." *Id.* at subd. 4(a). The statute mandates that the agency "consider" the statute's "guidelines" that information on level I offenders be disclosed to other law enforcement agencies and victims of or witnesses to the offender's crime; that information on level II offenders also be disclosed to schools, day care centers, "establishments

2. On an administrative appeal involving a constitutional issue, it may not be equitable to adhere to the rule that new evidence cannot be offered for purposes of reversal, as that would grant only the respondent the opportunity to prepare a Brandeis brief. We need not decide that issue here.

and organizations that primarily serve individuals likely to be victimized by the offender," and individuals who fit the offender's pattern of victim preference; and that in the case of a level III offender, "the agency also may disclose the information to other members of the community whom the offender is likely to encounter." *Id.* at subd. 4(b). Finally, the statute provides that law enforcement agencies and officials and their private designees are "not civilly or criminally liable for disclosing or failing to disclose information as permitted by this section." *Id.* at subd. 7.

■ Statutory interpretation presents a question of law, which this court decides de novo. *Hibbing Educ. Ass'n v. Public Employment Relations Bd.*, 369 N.W.2d 527, 529 (Minn.1985). Relator argues that he does not qualify as a "sex offender" under section 244.052, subdivision 1(4), because he was not "convicted of an offense for which registration * * * is required" under Minn.Stat. § 243.166 (1996 and Supp.1997). Subdivision 1(1) of that section provides that a person shall register if

> the person was charged with or petitioned for a felony violation of or attempt to violate any of the following, and convicted of or adjudicated delinquent for that offense or another offense arising out of the same set of circumstances.

The statute requires registration for a conviction or charge of first-degree murder under Minn.Stat. § 609.185(2) (1996) (homicide while committing or attempting to commit criminal sexual conduct in the first or second degree with force or violence), kidnapping of a minor, all criminal sexual conduct, and possession or production of child pornography.[3] *Id.* Registered sex offenders must inform law enforcement officials five days prior to any change of address and must return a monthly address verification card for a period of ten years. *Id.* at subds. 3(b), 4(c), 6(a). This court upheld the constitutionality of the registration statute in *State v. Manning*, 532 N.W.2d 244, 248–49 (Minn.App.1995), *review*

denied (Minn. July 20, 1995); *see also In re Welfare of C.D.N.*, 559 N.W.2d 431, 433 (Minn.App.1997) (extending *Manning* ex post facto law analysis to due process challenge), *review denied* (Minn. May 20, 1997). Relator concedes that he is required to register under the statute.

Relator contends that the phrase "convicted of an offense for which registration * * * is required" in section 244.052, subdivision 1(4), means that notification applies only where the offender is convicted of an offense that automatically results in registration because the offense is specifically listed in section 243.166. The state argued below, and the ALJ concluded, that the notification statute applies to any offender required to register under section 243.166, including those convicted of an unlisted offense "arising out of the same set of circumstances" as a charged, listed offense. Relator argues that if the legislature intended that result, it would simply have defined a sex offender as "a person required to register under section 243.166." On appeal, the state argues that the legislature inserted the "convicted of an offense" language to avoid application of the notification statute to juveniles, who are required to register after being "adjudicated delinquent" rather than "convicted."

■ If a statute, construed according to ordinary rules of grammar, is unambiguous, this court engages in no further statutory construction and applies its plain meaning. *State by Beaulieu v. RSJ, Inc.*, 552 N.W.2d 695, 701 (Minn.1996). "A statute is ambiguous if it is reasonably susceptible to more than one interpretation." *Id.* On appeal, both relator and the state have provided constructions that give effect to the entire statute, including the "convicted of an offense" language. *See* Minn.Stat. § 645.16 (1996) (stating that every law shall be construed to give effect to all its provisions where possible). We conclude that both parties' interpretations are reasonable and that

---

**3.** The statute also requires registration for offenders convicted of predatory crimes as defined under Minn.Stat. § 609.1352, subd. 2 (1996), if the offender was sentenced as a patterned sex offender or the court made findings that the offense was part of a predatory pattern of behavior, and for offenders convicted of or adjudicated delinquent for federal crimes similar to the state offenses listed. Minn.Stat. § 243.166, subd. 1(3), (4).

section 244.052, subdivision 1(4), is, therefore, ambiguous in its application to relator.

■ Where a statute is ambiguous, a court applies established canons of construction. We must presume that the legislature did not intend absurd and unreasonable results. Minn.Stat. § 645.17(1) (1996). The state concedes that under its interpretation, a person who had been criminally tried and *acquitted* of a sex offense, but was convicted of another offense arising out of the same set of circumstances, could still be subject to the notification law. Similarly, under the language of the statute, an offender could be subject to notification even if the charged sex offense was dismissed on motion of the prosecutor before a plea or dismissed by a court for lack of probable cause, although counsel for the state claimed at oral argument that the state would not seek notification under those circumstances. The state argues that the notification statute is a "civil, remedial law," and therefore its application could be proper even in the case of an acquittal because "the offender may have engaged in the conduct pursuant to a lesser, civil burden of proof." But the state concedes that the statute articulates *no* standard for proof of the underlying offense.

■ The unreasonableness of the state's construction is closely related to the question of its constitutionality. A second canon of statutory construction provides that where a statute is ambiguous and one interpretation gives rise to a constitutional conflict, courts will adopt an interpretation "that stands in harmony with the Constitution, even if the alternative construction might otherwise seem a more accurate reflection of legislative intent." *State v. Crims*, 540 N.W.2d 860, 867 (Minn.App.1995), *review denied* (Minn. Jan. 25, 1996). Because relator does not argue otherwise, we assume for purposes of this case, without deciding, that notification is constitutional as applied to an offender actually convicted of an offense listed in section 243.166, subdivision 1. Under this assumption, relator's construction of the statute raises no constitutional difficulties. We now turn to the constitutionality of the state's interpretation.

## III. Due Process

Relator argues that the notification statute, as applied to an offender not convicted of a sex offense, is a deprivation of liberty without due process of law in violation of the Fourteenth Amendment to the United States Constitution and article I, section 7, of the Minnesota Constitution. The ALJ in this case lacked jurisdiction to consider the constitutionality of the notification statute, and in any event constitutionality is a question of law, which this court decides de novo. *In re Blilie*, 494 N.W.2d 877, 881 (Minn.1993). The party challenging a statute bears the burden of proving its unconstitutionality beyond a reasonable doubt. *In re Haggerty*, 448 N.W.2d 363, 364 (Minn.1989). In general, due process protections under the Minnesota Constitution are identical with those provided by the federal constitution. *Humenansky v. Minnesota Bd. of Med. Exam'rs*, 525 N.W.2d 559, 565 (Minn.App.1994), *review denied* (Minn. Feb. 14, 1995).

### A. Protected liberty or property interest

■ In a due process analysis, the first inquiry is whether a protected liberty or property interest is implicated. *Board of Regents v. Roth*, 408 U.S. 564, 569–71, 92 S.Ct. 2701, 2705–06, 33 L.Ed.2d 548 (1972).[4] In 1971, the United States Supreme Court invalidated a state statute that allowed police, without notice or opportunity for a hearing, to post notices in retail liquor outlets forbidding the sale of liquor to certain individuals alleged to be alcoholic, holding that

> certainly where the State attaches "a badge of infamy" to the citizen, due process comes into play. * * * Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential.

---

**4.** In rejecting a due process challenge to the registration statute, this court used United States Supreme Court analysis applicable to determining whether a law was an impermissible ex post facto punishment in concluding that requiring sex offenders to notify police of their addresses was "nonpunitive." *C.D.N.*, 559 N.W.2d at 433. We construe this decision as stating essentially that registration by itself does not implicate a protected interest.

*Wisconsin v. Constantineau,* 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515 (1971) (citations omitted). But five years later, a five-Justice majority voted to uphold a Kentucky law that allowed police to post photographs of named "active shoplifters" in retail establishments, even when it was applied to an appellant whose shoplifting charges had been dismissed. *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). After noting that the alleged shoplifter likely had a cause of action for common-law defamation and expressing fears about indiscriminate widening of the scope of 42 U.S.C. § 1983, Justice Rehnquist addressed *Constantineau:*

> We think that the * * * language in the last sentence quoted, "because of what the government is doing to him," referred to the fact that the governmental action taken in that case deprived the individual of a right previously held under state law—the right to purchase or obtain liquor in common with the rest of the citizenry. "Posting," therefore, significantly altered her status as a matter of state law, and it was that alteration of legal status which, combined with the injury resulting from the defamation, justified the invocation of procedural safeguards. The "stigma" resulting from the defamatory character of the posting was doubtless an important factor in evaluating the extent of harm worked by that act, but we do not think that such defamation, standing alone, deprived Constantineau of any "liberty" protected by the procedural guarantees of the Fourteenth Amendment.

*Id.* at 708–09, 96 S.Ct. at 1164. The Court concluded that liberty or property interests receive constitutional protection only if they have been "initially recognized and protected by state law." *Id.* at 710, 96 S.Ct. at 1165.

While the respondent in *Paul* was unable to point to any deprivation of a previously held legal right, we conclude that relator has demonstrated such a deprivation. In noting that the respondent had alternatives to a constitutional action, the Court in *Paul* noted that "[i]mputing criminal behavior to an individual is generally considered defamatory *per se.*" 424 U.S. at 697, 96 S.Ct. at 1159. The Remedies Clause of the Minnesota Constitution provides that "[e]very person is entitled to a certain remedy in the laws for all injuries or wrongs which he may receive to his person * * * or character." Minn. Const. art. I, § 8. The Minnesota Supreme Court has interpreted this clause to "enjoin[ ] the legislature from eliminating those remedies that have vested at common law without a legitimate legislative purpose." *Olson v. Ford Motor Co.,* 558 N.W.2d 491, 496–97 (Minn.1997) (emphasis omitted). But the community notification statute grants state and local officials immunity from liability for "disclosing * * * information as permitted by this section." Minn.Stat. § 244.052, subd. 7.

Here, the police publicly distributed a notice that clearly suggested that relator had been convicted of sexually assaulting C.B., when in fact he had not been. Although there is no case law interpreting the immunity section of the notification statute, its language appears to grant immunity to state and local entities even for making false statements in the course of community notification. This would deprive relator of his right, recognized and protected under the state constitution, to pursue a common-law defamation action for the false statements of law enforcement officials. We express no view as to the outcome of any challenge to the immunity provision of the notification statute under the Remedies Clause, but we conclude that the change it produces in relator's legal status gives rise to a liberty interest protected under the due process clause as interpreted in *Paul.*[5] We therefore do not address

---

**5.** We also express no view as to whether relator would have standing to assert his claim absent actual dissemination of false statements during the notification process. We note that the deprivation is less certain than in *Constantineau* because the immunity clause of section 244.052 may be susceptible of an alternative construction that would preserve the right of an offender to challenge the dissemination of false statements.

*But cf. Rehn v. Fischley,* 557 N.W.2d 328, 332–33 (Minn.1997) (noting that immunities are meant to immunize the government against suit rather than merely against liability). But we also note that the stigma attached to a designation as a level III sex offender is considerably greater than that imposed on the "active shoplifter" in *Paul* or the alleged alcoholic in *Constantineau.* Because the Court in *Paul* recognized that stigma

relator's claims that notification deprives him of additional protected interests and fundamental rights.[6]

### B. Sufficiency of process

[10] Where a protected liberty or property interest that does not rise to the level of a fundamental right is at stake, a court will determine the adequacy of the process for deprivation of the right through a balancing test, which takes into account (1) the importance of the private interest at stake; (2) the importance of the state's interest; and (3) the risk of erroneous deprivation in view of the procedural safeguards provided. *Mathews v. Eldridge*, 424 U.S. 319, 334-35, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976).

Because reputation and the right to protect it through defamation actions are intangible interests, it is difficult to measure the effect of a deprivation. But we note that under the statute, notification "may" continue for ten years following an offender's release from confinement. *See* Minn.Stat. § 244.052, subd. 4(f) (incorporating duration clause of section 243.166). We recognize the strength of the state's interest in protecting the community from dangerous sex offenders, but the crucial question here is how an offender is determined to be a dangerous sex offender when his conviction is not for a sex offense.

We perceive a significant risk of arbitrary or erroneous deprivation of an offender's liberty interests under the state's interpretation of section 244.052. Brown conceded that in scoring the SOST he made a unilateral determination, based on the double hearsay of the presentence investigation report, that relator had in fact committed a sex offense. Brown

in turn sits on the ECRC, and while the offender has the right to be present and be heard when the ECRC initially determines his risk level, he has no statutory right to call or cross-examine witnesses, even where a sex offense has not been proven beyond a reasonable doubt. The offender does have a right to call and cross-examine witnesses at the administrative review hearing, but there he bears the burden of proving by a preponderance of the evidence that the ECRC erred. This procedure appears unprecedented in that at no point does the state bear the burden of proving, even by a preponderance of the evidence, that the offender actually committed a sex offense. *Cf. Caprice v. Gomez*, 552 N.W.2d 753, 758 (Minn.App.1996) (upholding statute placing on patient seeking release from civil commitment the burden of producing information establishing that he meets discharge standards because state continues to bear ultimate burden of persuasion), *review denied* (Minn. Oct. 29, 1996).

In determining that sex offender registration is not punitive, this court noted that "the fact that the registration information is confidential lessens the similarity between this statute and traditions in which 'registration' amounted to public scorn." *Manning*, 532 N.W.2d at 248 (citing Nathaniel Hawthorne, *The Scarlet Letter* (1850)). Although the fact of relator's arrest and the charges that were filed against him are public information, under the state's interpretation, law enforcement officials are entitled to inform the public that relator actually committed a sex offense, based ultimately on the discretion of a state-employed psychologist interpreting

---

remained an "important factor" in its newly promulgated "defamation-plus" test, we conclude that the great weight of the stigma in this case compensates for the relative uncertainty in establishing the other element. *See Paul*, 424 U.S. at 709, 96 S.Ct. at 1164.

**6.** These alleged deprivations of the right to establish a home, the right to travel, and rights to employment are substantially imposed by third parties rather than by the state. *Cf. In re Medworth*, 562 N.W.2d 522, 523, 525 (Minn.App. 1997) (refusing to enforce conservatorship that would deprive conservatee of fundamental right to establish her own home). But we note that both the Minnesota Supreme Court and the Unit-

ed States Supreme Court have invalidated statutes that prevented, as a practical matter, the exercise of substantive due process rights through intervening causes such as an appellant's poverty. *See, e.g., Shapiro v. Thompson*, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969) (invalidating statute that penalized right to travel by denying welfare benefits to new state residents); *Doe v. Gomez*, 542 N.W.2d 17 (Minn. 1995) (striking restriction on public funding of abortions). Because it substantially overlaps with our discussion of due process below, we need not separately address relator's claim that the statute deprives him of his right to have the state prove all elements of a charge against him.

double hearsay evidence.[7] This poses grave risks of erroneous deprivation of the "good name, reputation, honor and integrity" of individuals who are legally guilty only of crimes considered significantly less heinous than sex offenses and of the right to seek legal redress for that very deprivation.

On balance, we conclude that this risk of erroneous, irrevocable attachment of stigma outweighs the state's interest in protecting the public from individuals who have never been proven, even by a preponderance of the evidence, to be sex offenders. In such a case, notification appears more an abdication of the state's responsibility of public protection than an exercise of it. If the state is sufficiently convinced that a sex offense has occurred to conclude that the public requires protection, it should have sufficient evidence to prove the offense in court and thereby protect the public through incarceration of the offender for a period commensurate with the crime, rather than accepting a plea bargain with an accompanying shorter sentence and imposing on individual members of the public the responsibility of protecting themselves.

We therefore conclude that the state's interpretation of section 244.052 to permit community notification where an offender is charged with, but not convicted of, a sex offense, would result in a violation of state and federal guarantees of due process. Accordingly, we adopt relator's alternate construction, the constitutionality of which is not challenged before us, under which notification applies only to offenders convicted of an offense specifically listed in section 243.166, subdivision 1. Because relator was convicted only of burglary and therefore is outside the scope of the notification statute, we need not address his contention that the ALJ erred in upholding his level III designation.

7. The state urges this court to consider studies demonstrating that certain types of sex offenders typically have committed other offenses for which they have never been arrested. This evidence, if valid, supports a conclusion that an offender convicted of only one sex offense may legitimately be classified as level III. But such evidence is of limited probative value in refer-

**DECISION**

The statutory definition of "sex offender" for purposes of community notification is reasonably subject to two interpretations, and we conclude that an interpretation that allows notification under the existing procedural scheme where an offender was charged with, but not convicted of, a sex offense would result in deprivation of a constitutionally protected liberty interest without due process of law. We therefore construe the statute to provide that sex offender notification applies only to individuals who have been convicted of an offense for which sex offender registration is specifically required under Minn.Stat. § 243.166, subd. 1. Relator is not a sex offender under this definition, and we therefore reverse the ALJ's determination that he is a level III sex offender properly subject to community notification.

**Reversed; motion denied.**

ence to an offender who has not been proven to have committed even one sex offense. Here, the record includes one 19–year–old conviction of a sex offense but no reliable information as to its nature, and one alleged sex offense that has never been proven in accordance with due process protections.