**In the Matter of the Risk Level Determination of D.W.**

No. A08–1532.

Court of Appeals of Minnesota.

June 9, 2009.

Lawrence Hammerling, Chief Appellate Public Defender, F. Richard Gallo, Assistant Public Defender, St. Paul, MN, for relator D. W.

Lori Swanson, Attorney General, Noah A. Cashman, Assistant Attorney General, St. Paul, MN, for respondent Minnesota Department of Corrections.

Considered and decided by STONEBURNER, Presiding Judge; BJORKMAN, Judge; and MUEHLBERG, Judge.*

## OPINION

BJORKMAN, Judge.

In this appeal from the decision of two administrative law judges (ALJs) affirming his risk-level determination, relator argues that he is not "about to be released from confinement" within the meaning of Minn. Stat. § 244.052, and therefore may not be assigned a risk level. Because the ALJs did not err in interpreting the statute, we affirm.

## FACTS

In 1992, relator D.W. was committed to the Minnesota Department of Human Services (the DHS) as a sexual psychopathic personality. He is in the Minnesota Sex Offender Program (MSOP) in St. Peter. By September 2007, relator had reached the final inpatient phase of MSOP and was assigned to participate in the supervised integration program (MSI). MSI prepares civilly committed individuals to transition back into the community by permitting them increasingly less supervised trips outside the treatment facility, initially on the facility's campus and later in the community.

As a condition of relator's participation in MSI, the DHS asked the Minnesota Department of Corrections (the DOC) to convene an end-of-confinement review committee (ECRC) to assess relator's risk level. The ECRC assigned relator a risk level of III. Relator appealed to the Office of Administrative Hearings but did not challenge the assigned risk level. Rather, he argued that "it is contrary to law for the ECRC to assign him a risk level at this juncture," because he is still confined and "not likely to be 'released from confinement' soon." The ALJs who heard relator's appeal disagreed and affirmed the ECRC's risk-level determination. This certiorari appeal follows.

## ISSUE

Does Minn.Stat. § 244.052 permit an ECRC to assess the public risk posed by a civilly committed predatory offender confined in a state treatment facility when the offender begins a stage of treatment that permits community contact outside the facility?

## ANALYSIS

On certiorari appeal, we will affirm the decision of an ALJ unless the relator's substantial rights have been prejudiced because the decision was made upon unlawful procedure, affected by an error of law, or otherwise unsupported by substantial evi-

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

dence. Minn.Stat. § 14.69 (2008); *In re Risk Level Determination of S.S.,* 726 N.W.2d 121, 124 (Minn.App.2007), *review denied* (Minn. Mar. 28, 2007). But we review questions of statutory interpretation de novo. *In re Risk Level Determination of C.M.,* 578 N.W.2d 391, 395 (Minn.App.1998).

■ "The primary objective of statutory interpretation is to ascertain and give effect to the intention of the legislature." *Greene v. Comm'r, Minn. Dep't of Human Servs.,* 755 N.W.2d 713, 721 (Minn.2008). To do so, we first determine whether the statutory language is clear. *Hans Hagen Homes, Inc. v. City of Minnetrista,* 728 N.W.2d 536, 539 (Minn.2007). "If a statute, construed according to ordinary rules of grammar, is unambiguous, this court engages in no further statutory construction and applies its plain meaning." *C.M.,* 578 N.W.2d at 395. A statute is ambiguous when the language is "reasonably susceptible to more than one interpretation." *Id.* (quotation omitted). When a statute "is silent on a precise issue, that silence may be evidence of ambiguity." *In re Alexandria Lake Area Sanitary Dist. NPDES/SDS Permit No. MN0040738,* 763 N.W.2d 303, 311 (Minn.2009).

Section 244.052 provides:

The commissioner of corrections shall establish and administer end-of-confinement review committees at each state correctional facility and at each state treatment facility where predatory offenders are confined. The committees shall assess on a case-by-case basis the public risk posed by predatory offenders who are about to be released from confinement.

Minn.Stat. § 244.052, subd. 3(a). The statute further requires that such assessments be performed "at least 90 days before a predatory offender is to be released from confinement." *Id.,* subd. 3(d)(i). Relator concedes that, because of his commitment, he qualifies as a predatory offender and is subject to the risk-assessment and community-notification provisions in section 244.052. But the parties dispute whether relator is now "about to be released from confinement" and, thus, whether it is proper to assess his risk level at this time.

■ Section 244.052 defines "confinement" as "confinement in a state correctional facility or a state treatment facility," but does not define "release" or the phrase "released from confinement." Minn.Stat. § 244.052, subd. 1(1). In its common usage, "release" means to "set free from confinement, restraint, or bondage." *The American Heritage Dictionary* 1524 (3d ed.1992). Release from confinement in a state correctional facility occurs when the offender is permitted to leave prison. *In re Risk Level Determination of R.B.P.,* 640 N.W.2d 351, 354 (Minn.App.2002), *review denied* (Minn. May 14, 2002). But an individual confined in a state treatment facility pursuant to a civil-commitment order may experience various degrees of release from confinement, from being released on a pass, to transfer out of a secure facility, to provisional discharge, to full discharge from the treatment facility. *See* Minn.Stat. §§ 253B.18, subds. 4a, 6–7, 15, 253B.185, subd. 1 (2008); *see also County of Hennepin v. Levine,* 345 N.W.2d 217, 223 (Minn.1984) (recognizing the pass program under section 253B.18, which permits absence from a facility for fixed periods of time, is "a form of partial institutionalization").

■ Relator argues that an offender is not "released from confinement" until the offender is discharged, living in the community, and subject to community notification. The DOC counters that an offender is released from confinement when the offender is permitted to leave the treat-

ment facility on a pass and have contact with the community. Because both interpretations are reasonable, we conclude that the phrase "released from confinement" is ambiguous as it pertains to civilly committed offenders confined in state treatment facilities.

 If a statute is ambiguous, we defer to the administrative agency charged with administering the statute. *Greene,* 755 N.W.2d at 722; *see also* Minn.Stat. § 645.16(8) (2008) (permitting consideration of administrative interpretations of a statute). The DOC establishes and administers ECRCs. Minn.Stat. § 244.052, subd. 3(a). But when an offender is confined to a state treatment facility pursuant to a civil-commitment order, the DHS is the agency primarily responsible for determining when the offender will be released. *See* Minn.Stat. §§ 253B.18, subds. 4a–15, 253B.185, subd. 9 (describing procedures for release of one committed as a sexual psychopathic personality); *see also* Minn. Stat. § 243.166, subd. 1b(c), (d)(3) (2008) (including one committed as a sexual psychopathic personality within definition of predatory offender). And ECRCs have independent discretion to conduct risk assessments as appropriate. *R.B.P.,* 640 N.W.2d at 355. We therefore consider the policies the ECRCs follow in determining when to assess an offender's risk level.

The chair of the ECRC that assessed relator testified that the ECRC determines when to conduct risk assessments based primarily on a policy instituted by the DHS division that operates the treatment facilities where predatory offenders are confined.[1] A copy of the policy was admitted as evidence at relator's administrative review hearing. The policy defines "release from confinement" as "[a]ny su-

pervised or unsupervised access to the campus of a ... Treatment Facility, by a registration qualified patient to the community, or when transferred to another facility." The ECRC chair explained that the ECRC convenes to assess the risk level of offenders confined in the MSOP facility upon a request from an offender's treatment team indicating that the offender is being considered for "grounds or off grounds privileges."

Relator urges us not to defer to the DHS policy because it does not further section 244.052's community-notification purpose. But we are not persuaded that the notification purpose precludes assessment of an offender's risk level at the time the offender enters the MSI program. Although the statute does prohibit community notification while an offender lives in a residential facility such as MSOP, Minn. Stat. § 244.052, subd. 4(b); *In re Risk Level Determination of J.V.,* 741 N.W.2d 612, 615 (Minn.App.2007), *review denied* (Minn. Feb. 19, 2008), the very existence of this prohibition suggests that risk assessments are permitted and take place before an offender begins living in the community. Moreover, the DHS policy of assessing risk when an offender becomes eligible for passes from the treatment facility aligns with the earliest of the four stages of release applicable to those committed under section 253B.185, thus providing a consistent statutory scheme applicable to release of civilly committed offenders.

The DHS policy is consistent with the language and purpose of section 244.052. The fact that the community at large will not be notified of an offender's risk level until the offender is released to live in the community does not make risk assessment

---

1. This division is known as the Minnesota Department of Human Services State Operated Services (SOS). The DOC and SOS jointly establish and administer ECRCs. SOS established the subject policy, No. 4070, on November 3, 2003.

at the MSI treatment stage improper or superfluous. Minn.Stat. § 244.052, subd. 4(b), prohibits only community notification prior to discharge from the residential facility. It does not prohibit relevant law enforcement agencies from "maintain[ing] information regarding the offender" and "disclos[ing] the information to any victims of or witnesses to the offense committed by the offender." Minn.Stat. § 244.052, subd. 4(b); *see also* Minn.Stat. § 253B.18, subd. 5a(c) (requiring reasonable effort to notify victims before "provisionally discharging, discharging, granting pass-eligible status, approving a pass plan, or otherwise permanently or temporarily releasing a person ... from a treatment facility"). And while section 244.052 is known as the community-notification statute, the statute was created to protect the community. *See* Minn.Stat. § 244.052, subd. 4(a) (permitting disclosure of information that law enforcement deems "relevant and necessary to protect the public"). We conclude that it is consistent with the community-protection purpose of section 244.052 for law enforcement to have information regarding an offender's risk level before the offender is permitted contact with the community through the MSI program.

## DECISION

We conclude that Minn.Stat. § 244.052 permits assessment of the risk level of a civilly committed offender confined in a state treatment facility when the offender is about to begin the transition treatment phase that involves contact with the community outside the confining facility. Because relator is in a stage of treatment where he is expected to be permitted such contact soon, the ALJs did not err in affirming the ECRC's assessment of relator's risk level at this time.

**Affirmed.**