**In the Matter of the RISK LEVEL DETERMINATION OF G.G.**

No. A09–0007.

Court of Appeals of Minnesota.

Aug. 25, 2009.

---

2. Overtime compensation must be paid within two paychecks after it is earned. Minn. R. 5200.0150.

Lori Swanson, Attorney General, Angela Helseth Kiese, Assistant Attorney General, St. Paul, MN, for respondent Department of Corrections.

Marie L. Wolf, Interim Chief Appellate Public Defender, Jenneane L. Jansen, Assistant Public Defender, St. Paul, MN, for relator G.G.

Considered and decided by LARKIN, Presiding Judge; ROSS, Judge; and SCHELLHAS, Judge.

## OPINION

SCHELLHAS, Judge.

By writ of certiorari, relator challenges the determination of the Minnesota Department of Corrections (DOC) that relator is required to register as a predatory offender and that an end-of-confinement review committee (ECRC) has authority to assign relator a risk level. Because relator entered and remained in Minnesota for more than 14 days when he was brought from a Wisconsin prison to a Minnesota jail, we conclude that relator is required to register as a predatory offender. But because relator was not "about to be released from confinement," we conclude that the ECRC had no authority to assign him a risk level.

## FACTS

In August 2006, relator G.G. and a friend stole dirt bikes and a truck in Wabasha County, Minnesota. As a result, Wabasha County charged relator with third-degree burglary, two counts of felony theft, and felony conspiracy to commit theft. At the time that relator committed the offense in Minnesota, he was serving a five-year extended-supervision term in Wisconsin for third-degree sexual assault, after having a sexual relationship with a 15–year–old girl. Relator was also required to comply with Wisconsin's Sex Offender Registry. He had previously pleaded guilty in Wisconsin to fourth-degree sexual assault after having a sexual relationship with a 17–year–old girl and impregnating her, while relator was residing with her family. And as a juvenile, relator penetrated his five-year-old cousin anally with his penis, was charged with first-degree sexual assault of a child, and

was adjudicated delinquent in Wisconsin. Relator's extended supervision in Wisconsin was revoked, and he was imprisoned in Wisconsin with a provisional expiration date in 2011.

In January 2008, the Wisconsin Department of Corrections allowed relator to be transported to the Goodhue County jail in Red Wing, Minnesota, to resolve Wabasha County charges. Relator pleaded guilty to aiding and abetting third-degree burglary, and the Wabasha County District Court imposed a sentence of 33 months' imprisonment, with jail credit for 518 days of time served. The district court committed relator to the custody of the DOC and returned him to a Wisconsin prison to serve both his Minnesota and Wisconsin sentences under a dual commitment. Relator spent just over three weeks in Minnesota before he was returned to Wisconsin.

Relator was still incarcerated in Wisconsin when he became eligible for supervised release on his Minnesota prison sentence. At that time, relator met the definition of a "predatory offender" under Minnesota law because of his prior offenses. The DOC determined that relator was required to register in Minnesota as a predatory offender and receive a risk-level assignment. In April 2008, in advance of relator's supervised-release date, the ECRC at the St. Cloud correctional facility convened to determine relator's risk level. Relator appeared by telephone at this meeting, was represented by counsel, and stated that he had no plans to return to Minnesota after his release from prison in Wisconsin. Relator's counsel argued that relator was being assigned a risk level prematurely, because he was not confined to a Minnesota correctional facility. The ECRC nevertheless assigned relator a predatory-offender risk level of II.

Relator appealed the DOC's risk-level determination to an administrative-law judge (ALJ), arguing that he should not have been required to register as a predatory offender because the time he spent in jail in Goodhue County was due solely to state action and not his own volition. Relator also argued that the ECRC did not have authority to assign him a risk level because he was never incarcerated in a Minnesota correctional facility. The ALJ upheld the DOC's determination, and relator appeals by writ of certiorari.

## ISSUES

I. Is a predatory offender required to register under Minn.Stat. § 243.166, subd. 1b(b)(2), if he enters and remains in Minnesota as a result of state action rather than his own volition?

II. Does the DOC have authority under Minn.Stat. § 244.052, subd. 3(a), to assign a risk level to a predatory offender who was never confined in a Minnesota correctional facility or treatment center?

## ANALYSIS

### I

 Relator argues that he was not required to register as a predatory offender under Minn.Stat. § 243.166, subd. 1b(b)(2). Questions of statutory interpretation are reviewed de novo. *In re Risk Level Determination of C.M.,* 578 N.W.2d 391, 395 (Minn.App.1998). The object of statutory interpretation is "to ascertain and effectuate the intention of the legislature." Minn.Stat. § 645.16 (2008).

A predatory offender must register if that person "enters this state and remains for 14 days or longer." Minn.Stat. § 243.166, subd. 1b(b)(2). Here, the ALJ concluded that relator "clearly entered Minnesota and remained for more than 14 days when he was present in the Goodhue County Jail and sentenced on his Minnesota crimes." Relator argues that he did not "enter" Minnesota when he was brought to the Goodhue County jail because his presence in Minnesota at that time was the result of state action rather than his own volitional action.

Relator argues that the word "enters," as used in section 243.166, subdivision 1b(b)(2), implies volition. Section 234.166 does not define "enters." When words and phrases lack express statutory definition, they "are construed ... according to their common and approved usage." Minn.Stat. § 645.08(1) (2008). "Enter" is defined as "[t]o come or go into." *The American Heritage Dictionary* 436 (New College Edition 1999); *see also Black's Law Dictionary* 552 (7th ed.1999) (defining "enter" as "[t]o come or go into"). The common definition of "enter" does not necessarily include an element of volition or intent. We conclude that "enter" is ambiguous in this respect and that the best rule for interpreting the word is to examine the "subject-matter, object, and purpose of the statute." *See In re Estate of Handy,* 672 N.W.2d 214, 218 (Minn.App. 2003) (quotation omitted) (determining that the word "reside" has not gained a generally accepted meaning and that therefore the statute and subject matter must be reviewed to determine if a statutory residence requirement was met), *review denied* (Minn. Feb. 17, 2004).

The purpose of the sexual-predator registration statute has been described in consistent terms in caselaw, e.g., "to create an offender registry to assist law enforcement with investigations," *Boutin v. LaFleur,* 591 N.W.2d 711, 717 (Minn.1999); "to monitor sex offenders released into the community," *State v. Lilleskov,* 658 N.W.2d 904, 908 (Minn.App.2003); "to keep law

enforcement informed as to a predatory offender's whereabouts," *Kaiser v. State,* 641 N.W.2d 900, 907 (Minn.2002); and to provide "law-enforcement officials with the whereabouts of sexual offenders to assist them with investigations," *In re Welfare of C.D.N.,* 559 N.W.2d 431, 433 (Minn.App. 1997), *review denied* (Minn. May 20, 1997). To condition the requirement to register on the offender's volitional entry into Minnesota would exclude from the duty to register those offenders who come to Minnesota only to commit crimes while in Minnesota, leave the state, are apprehended, and are brought back into the state and incarcerated here against their will. We conclude that the text does not support relator's definition. Additionally, such a result would be contrary to the purpose of the registration statute. We therefore reject relator's argument that the word "enters" in section 243.166, subdivision 1b(b)(2), implies intent or volition.

## II

Relator also argues that the ECRC did not have the authority under Minn.Stat. § 244.052, subd. 3(a) (2008), to assign a risk level to relator. "If an administrative agency's authority is questioned, a [reviewing] court independently reviews the enabling statute." *In re Risk Level Determination of R.B.P.,* 640 N.W.2d 351, 353–54 (Minn.App.2002) (quotation omitted), *review denied* (Minn. May 14, 2002). Absurd and unreasonable results are presumed to be against the legislature's intent. Minn.Stat. § 645.17(1) (2008). But "[w]hen the words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit." Minn.Stat. § 645.16; *see also Weston v. McWilliams & Assocs., Inc.,* 716 N.W.2d 634, 639 (Minn.2006) (stating that the presumption that the legislature did not in-

tend an absurd result cannot generally be used to override the plain language of a statute); *Hyatt v. Anoka Police Dep't,* 691 N.W.2d 824, 827–28 (Minn.2005) ("We concluded that we could disregard a statute's plain meaning only in rare cases where the plain meaning utterly confounds a clear legislative purpose." (quotation omitted)).

Minn.Stat. § 244.052, subd. 3(a), provides that "[t]he commissioner of corrections shall establish and administer [ECRCs] at each state correctional facility and at each state treatment facility where predatory offenders are confined" and that "[t]he committees shall assess on a case-by-case basis the public risk posed by predatory offenders who are about to be released from confinement." In a recent case, this court determined that the meaning of the word "confinement" is plain when read with other provisions of section 244.052.

"Confinement" is defined as "confinement in a state correctional facility or a state treatment facility." Minn.Stat. § 244.052, subd. 1(1) (2008). "Correctional facility," for purposes of sections 244.01 to 244.11, is defined as "any state facility under the operational authority of the commissioner of corrections." Minn.Stat. § 244.01, subds. 1, 4 (2008). *In re Risk Level Determination of M.D.,* 766 N.W.2d 325, 327 (Minn.App.2009). This court further reasoned that, because "commissioner of corrections" refers to the Minnesota commissioner of corrections, "correctional facility" necessarily refers to Minnesota correctional facilities. *Id.*

In this case, although relator was confined in the Goodhue County jail, he was never confined in a Minnesota correctional facility under the operational authority of the Minnesota commissioner of corrections. Thus, relator was never "confined" under Minn.Stat. § 244.052, subd. 1(1), nor was he "about to be released from confine-

ment" as described in Minn.Stat. § 244.052, subd. 3(a). Because Minn.Stat. § 244.052, subd. 3(a), only grants the ECRC authority to assess the "public risk posed by predatory offenders who are about to be released from confinement," we conclude that the ECRC did not have authority to assign a risk level to relator.

 We are aware that our decision will prohibit the ECRC from assigning a risk level to a predatory offender who, unlike relator, planned to return to Minnesota after his release, merely because the offender served the entirety of his sentence in another state's correctional facility and that such a result conflicts with the purpose of the registration statute. But, unlike the word "enters," the word "confinement" is clearly and unambiguously defined in the statute where it is used. Where a statute's language is clear and unambiguous, a reviewing court must give effect to the plain meaning of the statute and may not engage in any further construction. *State v. Bluhm*, 676 N.W.2d 649, 651 (Minn.2004).

## DECISION

Relator entered Minnesota and remained for more than 14 days and is therefore required to register as a predatory offender under Minn.Stat. § 243.166, subd. 1b(b)(2), regardless of the fact that he did not enter and remain in Minnesota of his own volition. But relator was not "about to be released from confinement" under Minn.Stat. § 244.052, subd. 3(a), because he was never confined in a Minnesota correctional facility or treatment center. Therefore, the ECRC had no authority to assign relator a predatory-offender risk level.

**Affirmed in part and reversed in part.**