**STAR TRIBUNE, published by The Star Tribune Company, Respondent,**

v.

**CITY OF ST. PAUL, Minnesota, and its Department of Police, Appellant.**

**No. C5–02–1931.**

Court of Appeals of Minnesota.

May 13, 2003.

Mark R. Anfinson, Minneapolis, for respondent.

Manuel J. Cervantes, City Attorney, Reyne M. Rofuth, Assistant City Attorney, Saint Paul, for appellant.

Mark W. Gehan, Collins, Buckley, Sauntry & Haugh, P.L.L.P., Saint Paul, for amicus curiae.

Considered and decided by WRIGHT, Presiding Judge, and RANDALL, Judge, and SHUMAKER, Judge.

## OPINION

RANDALL, Judge.

Respondent Star Tribune brought an action against the City of St. Paul under the Minnesota Government Data Practices Act, Minn.Stat. ch. 13 (2002), seeking access to information the St. Paul Police Department gathered regarding racial profiling in traffic stops from April to December 2000. While the City made a summary report public, the officer/squad identity information in the raw data was not disclosed based on the City's conclusion that personal identity information was "personnel data" designated as private under Minn.Stat. § 13.43 (2002). Respondent initiated this declaratory judgment action, arguing the officer's individual names were public data. The district court concluded that the identities were public data and granted respondent summary judgment. The City appeals this determination. In addition, respondent seeks review of the district court's denial of its motion for attorney fees. Because we conclude that the officers are the subjects of the data, we reverse in part. We agree with the district court that attorney fees were not warranted and, therefore, we affirm that determination.

## FACTS

The City of Saint Paul (the City) conducted a study of traffic stops (the Study) by the Police Department (the Department) between April 15, 2000, and December 15, 2000. The resulting data set contained information from 41,249 traffic stops. The City already records a wide variety of data concerning each traffic stop that is public data. The Study added four additional pieces of data for each stop, which were the officer's responses to the following questions (with the possible answers listed in parentheses):

1. Perceived race of individual stopped?: (W)hite, (B)lack, (H)ispanic, (A)sian, or (N)ative American.
2. Sex?: (F)emale or (M)ale
3. Was the driver frisked?: (Y)es or (N)o
4. Was the car searched?: (Y)es or (N)o

The answers to these four questions were then combined with the general traffic stop source data that the Department already collected. The Study data was used to generate a report titled Summary Report for Traffic Stop Data (the Summary Report). The City made the Summary report available to the media in early January 2001. The Summary Report did not contain the Study data itself, but, instead, various summary statistics drawn from the Study data.

The Department hired the Institute on Race and Poverty to conduct an analysis of the raw Study data to

attempt to determine whether the Department engages in racial profiling and, if so, what the dimensions of the problem are; and to formulate suggestions for improvement to the Department's

data collection program that will allow for more comprehensive analysis of future data.

On January 10, 2001, respondent Star Tribune requested that the Department provide all the fields in the Study data, including the officer employee/squad data (collectively, the Complete data). What the respondent wanted was the individual names of the officers making the stops. In response, on January 23, the Department sent respondent a document titled, St. Paul Police Incident Data Available on Computer, which listed data fields, but did not contain individual names and identities.

Respondent sent a letter dated February 16, 2001, requesting the Complete data. In a letter dated March 26, 2001, Chief of Police Finney responded that access to the officer employee/squad data (identities by name) was denied. Finney contended that without the officer employee/squad data, the Study data was legitimate "summary data" under Minn.Stat. § 13.02, subd. 19 (2002), and that the officer employee/squad data entries are classified as private "personnel data" under Minn.Stat. § 13.43, subd. 4 (2002). Chief Finney also stated the City would seek an advisory opinion, which it attempted to do.

On May 4, 2001, respondent brought this declaratory action. Due to respondent's pending litigation, the Commissioner of Administration declined to proceed with an advisory opinion.

The district court concluded that the Complete data, including names of individual officers, was not private personnel data and should be released.

## ISSUES

I. Is the Complete data, including the officer employee/squad data field, private personnel data or public data?

II. Did the district court abuse its discretion by failing to award respondent attorney fees?

## ANALYSIS

### I. Public or private data

The district court concluded that the Complete data was "public data" pursuant to Minn.Stat. § 13.82 (2001) and not "personnel data" pursuant to Minn.Stat. § 13.43, subd. 1 (2002). Minn.Stat. § 13.82, subds. 2 and 6, classify a wide variety of "Arrest data" and "Response or incident data" as public.

Appellant argues that Minn.Stat. § 13.43 is controlling. That statute defines "personnel data" as:

[D]ata on individuals collected because the individual is or was an employee of or an applicant for employment by, performs services on a voluntary basis for, or acts as an independent contractor with a state agency, statewide system or political subdivision or is a member of or an applicant for an advisory board or commission.

Minn.Stat. § 13.43, subd. 1 (2002). Subdivision 2 then lists a variety of data on individuals that is public data. Minn.Stat. § 13.43, subd. 2 (2002). Subdivision 4, entitled "Other data" states:

All other personnel data is private data on individuals but may be released pursuant to a court order. Data pertaining to an employee's dependents are private data on individuals.

Minn.Stat. § 13.43, subd. 4 (2002). The district court determined that the Complete data was "public data," concluding that the data was not collected *because an individual is or was an employee of the Department.* Thus, the district court ordered the City to make the data available to respondent.

■ Summary judgment is appropriate where there is no genuine issue of material fact and the party is entitled to judgment as a matter of law. Minn. R. Civ. P. 56.03. On appeal, we review to determine whether any material issues of fact exist and whether the trial court erred in applying the relevant law. *Offerdahl v. University of Minn. Hosp. & Clinics*, 426 N.W.2d 425, 427 (Minn.1988). In this case, the parties have agreed that the material facts are not in dispute. When the district court grants summary judgment based on the application of a statute to undisputed facts, the result is a legal conclusion, reviewed de novo by the appellate court. *Lefto v. Hoggsbreath Enters., Inc.*, 581 N.W.2d 855, 856 (Minn.1998) (citing *Wallin v. Letourneau*, 534 N.W.2d 712, 715 (Minn. 1995)).

> The construction of a statute is a question of law and courts must adhere to the statute's clear language, unless doing so would be inconsistent with the legislature's manifest intent.

*Pathmanathan v. St. Cloud State Univ.*, 461 N.W.2d 726, 728 (Minn.App.1990) (citing *Kugling v. Williamson*, 231 Minn. 135, 42 N.W.2d 534 (1950)).

Appellant argues that the Complete data is "private personnel data" because the officers are the subjects of the data. Appellant argues that the real purpose of the data collection supports this classification and that the data need not be "evaluative" on its face to gain the qualifying shield of personnel data. Appellant contends vigorously that the district court failed to consider crucial evidence, namely St. Paul Police Chief Finney's lengthy and exhaustive 106–page affidavit (including exhibits), which sets out the purpose for conducting the Study.

■ We begin our analysis noting that both parties agree the data sought is "government data." The Minnesota Government Data Practices Act, Minnesota Statutes chapter 13 states:

> This chapter * * * establishes a presumption that government data are public and are accessible * * * unless there is federal law, a state statute, or a temporary classification of data that provides that certain data are not public.

Minn.Stat. § 13.01, subd. 3 (2002). The Minnesota Supreme Court stated that the purpose of the act is "to balance the rights of individuals (data subjects) to protect personal information from indiscriminate disclosure with the right of the public to know what the government is doing." *Demers v. City of Minneapolis*, 468 N.W.2d 71, 72 (Minn.1991).

■ Appellant argues that the Complete data should be classified as private personnel data. The act defines personnel data as:

> *Data on individuals collected because the individual is or was an employee* or an applicant for employment by, performs services on a voluntary basis for, or acts as an independent contractor with a state agency, statewide system or political subdivision or is a member of or an applicant for an advisory board or commission.

Minn.Stat. § 13.43, subd. 1 (2002) (emphasis added). Subdivision two lists numerous types of personnel data that is public data. Minn.Stat. § 13.43, subd. 2 (2002). Subdivision four states "[a]ll other personnel data is private data on individuals, but may be released pursuant to a court order." Minn.Stat. § 13.43, subd. 4 (2002). Data on individuals is defined as:

> [A]ll government data *in which any individual is or can be identified as the subject of that data*, unless the appearance of the name or other identifying data can be clearly demonstrated to be only incidental to the data and the data

are not accessed by the name or other identifying data of any individual.

Minn.Stat. § 13.02, subd. 5 (2002) (emphasis added). If the officer is the "subject of the data," and the data was "collected because the individual is or was an employee," the data is private personnel data under Minn.Stat. § 13.43, subd. 4 (2002). The seminal issue in this case is whether the individual officer is the subject of the data or, as respondent argues, was the subject of the data vehicle driver by color, race, sex, and law enforcement action taken.

Appellant argues logically that the driver's race, color, sex, etc., although recorded and computed, are incidental and the intended thrust of the study is the officer's perception of the race and color of the driver he was stopping, and what investigative tactics he employed based on that perception. Thus, appellant argues that the officer is the clear subject of the data.

Appellant points out that the individual driver's names were not even collected, absent a formal arrest, and that the study data can be searched by the officer's name, but not the driver's name. The Minnesota Police and Peace Officers Association (MPPOA), acting as amicus curiae, argues that the officer is clearly the subject of the data. MPPOA points out that the purpose of the Study was not to assess anything about the drivers, but rather "to discover the tendencies of the Department of Police in regard to racial profiling." We agree.

Respondent's argument that the driver is the subject of the data (meaning the identity of the individual officer stopping the vehicle is public data) is not convincing. An analogy could be drawn with the Rorschach ink-blot test. The "design," if any, in the ink stain is not important. Yes, you need the blotter with the ink stain for the test, but the test *is not about the blotter* or about the images the test-taker

thought one might see. Rather, the reason for the test is to assess and interpret the test-taker's perception as to what he sees in the ink blot. If the test-maker looks at the ink blot and says "Octopus," it does not matter whether you can find an art critic to agree that somehow the ink blot has the vague shape of an octopus or does not have the vague shape of an octopus. It is the person's answer that is important. The same is true in the police department's study test. The actual race, color, or gender of the driver is not as important as what race, color, or gender the officer perceived when he made the decision to stop and (at times) take further investigative action.

The data recorded about race, color, gender, etc. is not unimportant, and the statistics are part of the study, but the essential part of the study, the sine qua non, is what race, color, or gender the officer thought he was stopping and what he did once he made the stop. Thus, we determine that the individual officers are the subjects of the data. The next issue is to decide whether the data was collected because the officers were employees.

■ The district court stated "one must inquire into the purpose for collecting the data" when determining whether the data meets the definition of personnel data. The court then noted that, though the Department's claimed purpose was to assess individual officers as well as the Department as a whole, merely claiming a purpose was not sufficient. Quoting from the Summary Report and a letter from St. Paul City Attorney Reyne Rofuth, the district court concluded:

> Neither of these statements indicated a purpose of collecting the data was to evaluate the conduct of particular individuals. Rather the information was collected to determine if a department

wide problem exists, the dimensions of such a problem and the effect of the problem on the community. The fact that further analysis of the data may or may not have implications involving particular individuals does not change the essential nature of the data or turn it into data "collected because the individual is or was an employee." Accordingly, it is this Court's opinion that the information is not, by definition, "personnel data."

Appellant contends that there were three purposes for the Study: (1) to look at individual officers who made up the Department and their performance; (2) to use the data as a management tool to determine if the department and its officers were engaging in racial profiling; and (3) to possibly counsel, retrain, or reassign officers as a result of the Study. Appellant notes Finney's lengthy affidavit, the report itself, and a letter written by a Saint Paul City Attorney on behalf of the Department to the Director of Information Policy Analysis Division of the Minnesota Department of Administration support these purposes. Appellant argues that the district court erred by failing to consider crucial evidence, namely Finney's undisputed affidavit. We agree. Finney's affidavit states in pertinent part

[T]he purpose of collecting the Study data and combining it with routine general traffic stop data, was to obtain a management tool by gaining a snap shot view of the Department's operation and of individual officer employees with the results used to attempt to determine if the Department could be seen as having a practice of engaging in racial profiling in traffic stops or if individual officer employees were engaging in racial profiling in traffic stops.

* * *

[P]rior to the commencement of the Study I promised the Saint Paul Police Federation that I would not disclose the name of any officer employee in the Study unless directed to do so by a court order.

* * *

I considered and treated the personnel data the Study, with its combined Study data and routing general traffic stop source data, as it related to individual officer employees. * * * [A]s a result of the Study data, I personally spoke to individual officer employees about the Study data as it related to them and since my discussions with the officer employees, I have seen a change in their behavior.

Additionally, the Rofuth letter, states:

The study data are also being used by the Department administration as a management tool which could result in counseling, training or reassignment of officers. In fact, the Department has made some reassignments of patrol officers due in part to the study data.

The documents show the purpose of the study was to manage personnel and take personnel actions in certain circumstances.

We conclude: (1) the data was collected because the officers were employees; (2) the officers were the subjects of the data; and (3) the data is personnel data and is not public information.

## II. Attorney fees

■ Respondent argues that it is entitled to attorney fees because appellant refused access to the data without having a "clear and sound legal basis" and "sought to make the applicable law far more complex and nuanced than it really is."

■ "On review, this court will not reverse a trial court's award or denial of attorney fees absent an abuse of discre-

tion." *Becker v. Alloy Hardfacing & Eng'g Co.,* 401 N.W.2d 655, 661 (Minn. 1987) (citation omitted). The district court did not elaborate on its denial of attorney fees. Respondent asks this court to establish a new rule of law that in cases where a citizen or a news organization is pursuing its right of access under the Data Practice Act, and does prevail in district court, it is entitled to an award of attorney fees, unless applicable law is clearly unsettled. Respondent agrees there is no such blanket rule for attorney fees for the media when successful at the trial court level, but argues such a rule would be good policy.

We can only note that the statute does not contain such a rule, and we are not disposed to create one by judicial fiat in this case. The district court denied respondent attorney fees when respondent was successful. It is difficult for us to find that the district court abused its discretion in denying attorney fees when respondent won, when we reverse on the merits.

## DECISION

We conclude the police officers are the subjects of the data in question and that the data was collected because the police officers were employees of a government entity. As such, the data is classified as personnel data and is not publicly accessible under the Minnesota Government Data Practices Act.

**Affirmed in part and reversed in part.**