**INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL NO. 292, Respondent (A07–1388), Appellant (A07–1418),**

v.

**CITY OF ST. CLOUD, Defendant (A07–1388), Respondent (A07–1418),**

**Design Electric, Inc., intervenor/defendant, Appellant (A07–1388), Respondent (A07–1418).**

Nos. A07–1388, A07–1418.

Court of Appeals of Minnesota.

June 10, 2008.

Marshall H. Tanick, Teresa J. Ayling, Mansfield Tanick & Cohen, Minneapolis, MN, for respondent/appellant International Brotherhood of Electrical Workers.

Patricia Y. Beety, League of Minnesota Cities, St. Paul, MN, for respondent City of St. Cloud.

Douglas P. Seaton, Alec J. Beck, Sara G. Sidwell, Seaton, Beck & Peters, P.A., Minneapolis, MN, for appellant/respondent Design Electric, Inc.

Considered and decided by HUDSON, Presiding Judge; CONNOLLY, Judge; and MUEHLBERG, Judge.

## OPINION

MUEHLBERG, Judge.*

This case is a consolidation of two appeals. In the first, Design Electric, Inc. (Design) appeals from a district court order granting summary judgment in favor of International Brotherhood of Electrical Workers, Local No. 292 (IBEW). Design argues that the district court erred in its application of Minn.Stat. § 13.43 (2006) to the personnel data requested by IBEW and asks this court to conclude that IBEW is barred by Minn.Stat. § 13.43, subd. 6 from receiving the requested data. In the district court, the City of St. Cloud (City) took the same position as Design and opposed IBEW's motion for summary judgment. Because the City has not filed its own brief on the issue of summary judgment and is not adverse to Design, the City is not a respondent to Design's appeal.

In the second appeal, IBEW challenges the portion of the summary-judgment order that awarded attorney fees in the amount of $500 payable by the City. IBEW also appeals from the district court's denial of its motion seeking additional attorney fees from both Design and the City. IBEW asks this court to conclude that it is entitled to receive attorney fees and award the requested $35,042.10 in fees. Both Design and the City oppose IBEW's appeal and are respondents on those issues. In addition to these consolidated appeals, IBEW moves to supplement the record in the consolidated appeal. Both Design and the City have opposed IBEW's motion.

Because the payroll data requested by IBEW is public personnel data that IBEW is not prohibited from acquiring, we affirm the order granting summary judgment in part. But because the home addresses of Design's employees that are included in the data requested by IBEW are not public personnel data as defined by Minn.Stat. § 13.43, subd. 2, we reverse that portion of the order granting summary judgment. The district court did not abuse its discre-

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

tion in awarding nominal attorney fees against the City, and although there is legal authority for awarding attorney fees against Design in this matter, we affirm the district court's exercise of discretion in refusing to do so. Because IBEW's request to supplement the record is improper, we deny its motion.

## FACTS

This appeal arises from a grant of summary judgment, and the facts are not in dispute. Design is a commercial electrical contractor with its principal place of business in Stearns County, Minnesota. In 2006, Design was hired by the City to perform subcontracting work on the East St. Germaine Utility Project (Utility Project). Pursuant to the Minnesota Prevailing Wage Law, Minn.Stat. § 177.41 (2006), Design was required by the specifications of the Utility Project to pay prevailing wages to its employees.[1] The prevailing wage is certified by the Minnesota Department of Labor and Industry and is the most frequently occurring wage paid to the largest number of workers in a given labor classification. *See* Minn.Stat. §§ 177.41, subd. 4, 177.44, subds. 3, 4 (2006).[2]

After Design completed its work on the Utility Project, the City requested the certified payroll records to confirm that Design employees were paid prevailing wages. Design provided these records, which included individual employee names, addresses, telephone numbers, social security numbers, retirement savings, tax exemptions, wage and benefit rates, tax withholdings, hours and days worked, and identifying information of gender, race, age and national origin. In anticipation of litigation, Design marked the records "confidential" as constituting "trade secrets."[3]

IBEW is a labor union whose members are electricians living in various parts of Minnesota, but it does not represent any of Design's employees. IBEW requested that the City provide copies of Design's certified payroll records on November 21, 2006. The City denied IBEW's request and responded that because Design had marked the records "confidential" it could not produce those documents. IBEW made two subsequent requests for the documents on December 28, 2006 and February 8, 2007. Both requests were denied by the City.

IBEW filed this lawsuit against the City on February 20, 2007, following the City's refusal to provide the payroll records. IBEW claimed that the payroll records were public under the Minnesota Government Data Practices Act, Minn.Stat. §§ 13.001–.90 (2006). In its answer to IBEW's complaint, the City objected to disclosure of the payroll records based on Design's assertions of confidentiality and the City's position that the payroll records are nonpublic. IBEW moved for summary judgment on April 6, 2007. On that same day, Design moved to intervene. The district court granted Design's motion to intervene as a matter of right and deferred

---

1. Prevailing wages are required for all state-funded construction projects. Minn.Stat. §§ 177.41–177.44 (2006).

2. The Minnesota Department of Labor and Industry recognizes 131 separate job classes common to the construction industry. Prevailing Wage, *http://w ork-place.doli.state.mn.us/prevwage/rates—set.php* (last visited May 14, 2008).

3. In a previous dispute between IBEW and Design, the City produced similar payroll records despite Design's protests. The previous lawsuit was held moot because the City produced the documents before Design had filed its lawsuit seeking to prevent IBEW from receiving the records. *See Design Electric, Inc. v. City of St. Cloud,* No. C1–01–734 (Minn.App. Nov.13, 2001).

ruling on IBEW's summary judgment motion.

The district court heard arguments on IBEW's motion and both Design and the City argued against summary judgment. Although Design initially opposed release of the payroll records because they were claimed to be confidential trade secrets, in their arguments in opposition to IBEW's motion, Design abandoned its trade secret assertion and argued that the payroll records are "personnel data" as defined by Minn.Stat. § 13.43. Because IBEW is a labor union, Design asserted that Minn. Stat. § 13.43, subd. 6 limits IBEW's access to personnel data and barred it from receiving these payroll records absent specific purposes enumerated in subdivision 6. Design argued that IBEW had not asserted any of these specific purposes and could not acquire the payroll records.

After deliberation, the district court granted summary judgment in favor of IBEW on May 24, 2007, and ordered the City to release the payroll records to IBEW. In addition, the district court awarded IBEW $500 in attorney fees, payable by the City. Noting the "difficult position" the City was put in having been subjected to a previous lawsuit by Design based on the same assertion of trade secrets, the district court concluded there was initially a "legitimate reason for the City to withhold the information." But because Design later abandoned its trade-secret assertion, the district court concluded the City should have disclosed the information following the summary judgment hearing and stated that because of this violation it was "appropriate" to award the $500 in attorney fees.

Design filed a motion on May 28, 2007 to stay the district court's order to release the payroll records pending appeal, and the district court granted the stay. Then on June 20, 2007, IBEW filed a motion seeking attorney fees pursuant to Minn. Stat. § 13.08, subd. 4, and included affidavits from trial counsel and an expert witness pertaining to the $35,042.10 in fees requested. Both Design and the City opposed this motion, and the district court denied IBEW's request, but maintained the $500 in attorney fees previously ordered. Design appeals from the order granting summary judgment, and IBEW appeals from the order denying attorney fees.

## ISSUES

I.  Did the district court err in granting summary judgment in favor of IBEW on the basis that Minn.Stat. § 13.43, subd. 6 (2006) does not limit a labor union's ability to have access to public personnel data as defined by Minn.Stat. § 13.43 (2006)?

II.  Did the district court err in denying IBEW's motion seeking attorney fees against both Design and the City?

III.  Should IBEW be permitted to supplement the record?

## ANALYSIS

### I.

Design argues that the district court erred in its application of Minn.Stat. § 13.43 (2006) and asks this court to reverse the order granting summary judgment in favor of IBEW. Design asserts that Minn.Stat. § 13.43, subd. 6 is a limitation on access to public data by labor unions. Design suggests that Minn.Stat. § 13.43, subd. 6 lists specific purposes that must be asserted before a labor union can have access to any personnel data. Because IBEW has not requested access for the specific purposes listed in subdivision 6, Design argues IBEW is barred from requesting the payroll records.

On appeal from summary judgment, an appellate court addresses two questions: (1) whether there are any genuine issues of material fact; and (2) whether the district court erred in applying the law. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990). When the district court grants summary judgment based on the application of a statute to undisputed facts, the result is a legal conclusion, which is reviewed de novo by an appellate court. *Lefto v. Hoggsbreath Enters., Inc.*, 581 N.W.2d 855, 856 (Minn.1998).

■■■■ The Minnesota Government Data Practices Act (MGDPA), Minn.Stat. §§ 13.001–13.90 (2006)

regulates the collection, creation, storage, maintenance, dissemination, and access to government data in government entities. It establishes a presumption that government data are public and are accessible by the public for both inspection and copying unless there is federal law, a state statute, or a temporary classification of data that provides that certain data are not public.

Minn.Stat. § 13.01, subd. 3. The MGDPA represents a "fundamental commitment to making the operations of our public institutions open to the public." *Prairie Island Indian Cmty. v. Minn. Dept. of Pub. Safety*, 658 N.W.2d 876, 883–84 (Minn.App. 2003). Because of this commitment to transparency in our public institutions, courts construe the MGDPA "in favor of public access." *Id.* at 884.

Despite the general presumption that government data is public, the MGDPA establishes that not all government data is accessible to the public.[4] Minn.Stat. § 13.43 establishes a statutory exception to the general presumption of public access for "personnel data." As defined by section 13.43, "personnel data" is "data on individuals collected because the individual is or was an employee of or an applicant for employment by, performs services on a voluntary basis for, or acts as an independent contractor with a government entity." *Id.*, subd. 1. Minn.Stat. § 13.43, subd. 2, specifies the "personnel data" that is classified as public:

(1) name; employee identification number, which must not be the employee's Social Security number; actual gross salary; salary range; contract fees; actual gross pension; the value and nature of employer paid fringe benefits; and the basis for and the amount of any added remuneration, including expense reimbursement, in addition to salary;

(2) job title and bargaining unit; job description; education and training background; and previous work experience;

(3) date of first and last employment;

(4) the existence and status of any complaints or charges against the employee, regardless of whether the complaint or charge resulted in a disciplinary action;

---

4. In the MGDPA, most government data is first classified into one of two categories: "data on individuals" or "data not on individuals." Minn.Stat. § 13.02, subds. 4, 5 (2006). These categories are further divided into three subclasses. Data on individuals is divided into "public data on individuals," "private data on individuals," and "confidential data on individuals." *Id.*, subds. 3, 12, 15. Data not on individuals is also divided into three subclasses: "public data not on individuals,"

"nonpublic data," and "protected nonpublic data." *Id.*, subds. 9, 13, 14.

In general, "public data" is accessible to the public. *Id.*, subds. 14, 15. "Private data on individuals" and "nonpublic data" is generally not accessible to the public, but is accessible to the subject of the data. *Id.*, subds. 9, 12; *see also* Minn.Stat. § 13.04, subd. 3 (allowing the person who is the subject of public data on individuals or private data on individuals to have access to such data).

(5) the final disposition of any disciplinary action together with the specific reasons for the action and data documenting the basis of the action, excluding data that would identify confidential sources who are employees of the public body;

(6) the terms of any agreement settling any dispute arising out of an employment relationship, including a buy-out agreement as defined in section 123B.143, subdivision 2, paragraph (a); except that the agreement must include specific reasons for the agreement if it involves the payment of more than $10,000 of public money;

(7) work location; a work telephone number; badge number; and honors and awards received; and

(8) payroll time sheets or other comparable data that are only used to account for employee's work time for payroll purposes, except to the extent that release of time sheet data would reveal the employee's reasons for the use of sick or other medical leave or other not public data.

*Id.* "All other personnel data is private data on individuals but may be released pursuant to a court order." *Id.*, subd. 4. By the language of Minn.Stat. § 13.43, any personnel data that is not classified public and listed explicitly within subdivision 2 is presumed to be private. *Compare id.,* subd. 2 *with id.,* subd. 4.

We note that this analysis of Minn.Stat. § 13.43 may be perceived to conflict with the reasoning in *Star Tribune v. City of St. Paul,* 660 N.W.2d 821 (Minn.App.2003). The disputed issue in *Star Tribune* was whether data collected on traffic stops was comprehensive law enforcement data, made public under Minn.Stat. § 13.82 (2002), or private personnel data under Minn.Stat. § 13.43, subd. 4 (2002). 660 N.W.2d at 824. Our decision in *Star Trib-*

*une* determined that the data was private personnel data as defined by Minn.Stat. § 13.43, subd. 4 (2002), *id.* at 827, and we do not disagree with that conclusion. But to the extent that *Star Tribune* can be read to place the emphasis on whether an individual is the subject of the data in determining whether or not it is "personnel data," we find that analysis to misapply the language of Minn.Stat. § 13.43. In any event, *Star Tribune* deals with the relationship between Minn.Stat. § 13.82 and Minn.Stat. § 13.43, subd. 4. The present case deals with the relationship among Minn.Stat. § 13.43, subds. 2, 4, 5a and 6.

■ Here, the district court found that all of the payroll data IBEW requested is public personnel data as defined by Minn.Stat. § 13.43, subd. 2. Because a labor union is a "person" as defined by the MGDPA, the district court concluded that IBEW could have access to the payroll records. *See* Minn.Stat. § 13.02, subd. 10 (defining "person" for purposes of the MGDPA as "any individual, partnership, corporation, association, business trust, or a legal representative of an organization"). We agree that IBEW is a "person" under that definition in the MGDPA and as a result, may have access to any personnel data that is public as listed in Minn.Stat. § 13.43, subd. 2. The payroll records IBEW seeks, with the exception of the home addresses, as discussed below, fit within the confines of the personnel data that is classified public by subdivision 2 and should be released to IBEW.

■ In reaching its conclusion, the district court addressed Design's argument that the home addresses in the payroll records cannot be released. The district court cited Minn.Stat. § 13.43, subd. 5a and stated that the only data that is prohibited from being released are home addresses "with respect to employees working in jails, prisons or other corrections

facilities to inmates and certain others associated with the corrections facility." According to the district court, this limited exclusion "establishes that home addresses of other employees not excluded are public information."

But we believe this conclusion misconstrues the statute and its explicitly limited amount of personnel data that is made public. Minn.Stat. § 13.43, subd. 2 describes various data that is classified as public personnel data, and home addresses are not included in the enumerated data made public in subdivision 2. In light of the language in Minn.Stat. § 13.43, subd. 4 that "[a]ll other personnel data is private data on individuals," we conclude that home addresses are not public personnel data and the district court erred in its conclusion. The district court is correct that Minn.Stat. § 13.43, subd. 5a specifically mentions home addresses. But subdivision 5a specifically states:

> Notwithstanding any other provision of this section, the following data relating to employees of a secure treatment facility defined in section 253B.02, subdivision 18a, employees of a state correctional facility, or employees of the Department of Corrections directly involved in supervision of offenders in the community, shall not be disclosed to facility patients, corrections inmates, or other individuals who facility or correction administrators reasonably believe will use the information to harass, intimidate, or assault any of these employees: place where previous education or training occurred; place of prior employment; *and payroll timesheets or other comparable data, to the extent that disclosure of payroll timesheets or*

*other comparable data may disclose future work assignments, home address or telephone number,* the location of an employee during nonwork hours, or the location of an employee's immediate family members.

*Id.* (emphasis added). The language of subdivision 5a makes payroll timesheets or comparable data that would otherwise be public into private data to the extent they would disclose home addresses to certain people requesting the data for improper purposes. *Id.* Because home addresses are not listed in the personnel data that is public in subdivision 2, home addresses are made private by subdivision 4 and should be redacted from personnel data disclosed to IBEW.[5]

■ But Design asserts that even if the payroll records are public, Minn.Stat. § 13.43, subd. 6 acts as a limitation on a labor union's ability to acquire what is otherwise public personnel data. Design argues that it was error for the district court to conclude that subdivision 6 is not a limitation on a labor union's ability to access personnel data unless the labor union asserts a specific purpose in requesting the data as listed in the statute.

Minn.Stat. § 13.43, subd. 6 concerns access to personnel data by labor organizations. It states:

> Personnel data may be disseminated to labor organizations to the extent that the responsible authority determines that the dissemination is necessary to conduct elections, notify employees of fair share fee assessments, and implement the provisions of chapters 179 and 179A. Personnel data shall be disseminated to labor organizations and to the Bureau of Mediation Services to the ex-

---

5. As discussed subsequently, there may be situations where a labor union may be able to acquire home addresses when the labor union has asserted certain purposes for requesting

the data. *See* Minn.Stat. § 13.43, subd. 6. Because we have no such stated purpose here, we do not address that issue.

tent the dissemination is ordered or authorized by the commissioner of the Bureau of Mediation Services.

Minn.Stat. § 13.43, subd. 6. The language of this subdivision allows a responsible authority or government entity to disseminate personnel data to a labor union for the purposes enumerated. If read as Design suggests, subdivision 6 would conflict with the broad presumption of public access throughout the MGDPA and conflict with the ability of a labor union, as a "person," to receive data that is otherwise public under Minn.Stat. § 13.43, subd. 2. Where two statutory provisions conflict, the two "shall be construed, if possible, so that effect may be given to both." Minn. Stat. § 645.26, subd. 1 (2006).

The district court concluded that appellant's argument would create an absurd result and allow "an employee of the labor union, or any other person [to] simply request the documents in his or her name as an individual in order to obtain the documents, and then provide them to the labor union." But under appellant's reading of Minn.Stat. § 13.43, the labor union itself, or its legal representative, could not make that same request. An examination of the history of subdivision 6 demonstrates that appellant's argument lacks merit and that the district court was correct to conclude that Minn.Stat. § 13.43, subd. 6 is not a limitation on a labor union's ability to have access to personnel data.

The legislative history of Minn.Stat. § 13.43, subd. 6 is discussed in a 1982 William Mitchell Law Review article. *See* Donald A. Gemberling & Gary A. Weissman, *Data Privacy: Everything You Wanted to Know About the Minnesota Government Data Practices Act—From "A" to "Z,"* 8 Wm. Mitchell L.Rev. 573, 645 (1982). Originally in the MGDPA, most personnel data was classified as private.

*See* 1979 Minn. Laws ch. 328, § 17, at 919–20: Gemberling & Weissman, *Data Privacy, supra,* at 645. A series of conflicts between labor unions citing their rights under the Public Employment Labor Relations Act (PELRA), and employers asserting their rights to keep personnel data private caused the Minnesota Legislature to amend the personnel-data section of the MGDPA. Gemberling & Weissman, *Data Privacy, supra,* at 645; *see also* 1981 Minn. Laws ch. 311, § 13, at 1432 (currently codified at Minn.Stat. § 13.43, subd. 6). The amendment allowed a labor union to gain access to what was, at that point, private personnel data for the purposes of "conduct[ing] elections, notify[ing] employees of fair share fee assessments, and implement[ing] the provisions of [PELRA]." 1982 Minn. Laws ch. 311, § 13, at 1432 (currently codified at Minn.Stat. § 13.43, subd. 6).

Read in the context of the rest of Minn. Stat. § 13.43, subdivision 6 acts as an expansion of a labor union's ability to access personnel data, not a limitation as Design suggests. To implement the provisions of PELRA, subdivision 6 gives a labor union access to data that would otherwise be private. The subdivision was enacted to ensure that a labor union would not be barred from acquiring information that it needed to effectuate PELRA. Gemberling & Weissman, *Data Privacy, supra,* at 645. It is not a limitation on IBEW's ability to access the payroll information, and Design's argument was properly rejected by the district court. Although Minn.Stat. § 13.43, subd. 6 may allow a labor union to access otherwise private personnel data like the home addresses requested by IBEW, in our case the union has never requested these addresses for any of the purposes enumerated in subdivision 6, and so we decline to apply it to their request here. We hold that employees' home ad-

dresses are not public personnel data under Minn.Stat. § 13.43, subd. 2 and may not be disclosed.

## II.

IBEW appeals from the district court's denial of its request for attorney fees beyond the $500 initially awarded in the district court's order granting summary judgment. IBEW argues it was an abuse of discretion to deny its motion for attorney fees in the amount of $35,024.10 and asks this court to reverse the district court order and grant IBEW the requested fees against both the City and Design. An appellate court reviews a district court award or denial of attorney fees for an abuse of discretion. *WDSI, Inc. v. County of Steele*, 672 N.W.2d 617, 622 (Minn.App. 2003). "A determination regarding attorney fees will rarely be overturned on appeal." *Id.*

Generally, attorney fees are allowable if authorized by contract or in a statute. *Id.* The MGDPA provides that "any aggrieved person seeking to enforce the person's rights under this chapter or obtain access to data may bring an action in district court to compel compliance with this chapter and may recover costs and disbursements, including reasonable attorney's fees, as determined by the court." Minn.Stat. § 13.08, subd. 4 (2006).

Here, the district court considered IBEW's motion seeking attorney fees against the City following its order granting summary judgment. Although appellant asserts that the district court awarded these fees *sua sponte*, the record shows the district court awarded attorney fees because IBEW had included attorney fees and costs in the "relief requested" portion of the memorandum submitted in support of summary judgment. Appellant later filed a separate motion seeking attorney fees, but the district court denied that motion and affirmed the award from the summary judgment order, stating that "the City is not responsible for [IBEW's] 'reasonable attorney fees and costs.' Rather, a limited attorney fee award should be assessed against the City."

In support of the limited attorney fees awarded against the City, the district court stated that the trade-secret argument used to resist disclosure of the payroll records was presented by Design and not created by the City. This "put the City in a difficult position," but "[s]hort of the City being more assertive in obtaining information from Design to support Design's claim, this trade secret claim made it reasonable for the City to initially refuse to provide the information sought by [IBEW] until this trade secret claim could be verified one way or the other." Because Design abandoned this claim, the original legitimate reason for the City to withhold the payroll records was no longer present, and the "City should have disclosed the information," the district court held. Because the City failed to disclose the information following Design's change in position, the district court concluded that a $500 limited attorney fee award was appropriate. The district court provided detailed reasons why a limited award is appropriate. These substantial reasons support the district court's denial of additional fees, and we cannot say this is one of those rare situations involving attorney fees that warrants reversal on appeal. *See WDSI*, 672 N.W.2d at 622.

IBEW's appeal also asks this court to award attorney fees payable by Design. "Under the MGDPA, a political subdivision may contract with a private party to perform any of its governmental functions. The private party then acts as a governmental entity, must comply with the requirements of the MGDPA, and is

held liable for MGDPA violations." *Id.* at 620 (citations omitted).

If a government entity enters into a contract with a private person to perform any of its functions, the government entity shall include in the contract terms that make it clear that all of the data created, collected, received, stored, used, maintained, or disseminated by the private person in performing those functions is subject to the requirements of this chapter and that the private person must comply with those requirements as if it were a government entity. The remedies in section 13.08 apply to the private person under this subdivision.

Minn.Stat. § 13.05, subd. 11(a) (2006). Here, Design contracted to perform a governmental function by participating in the construction of the Utility Project. *See WDSI*, 672 N.W.2d at 621 (holding that construction of a jail is a clear governmental function undertaken by a private party). By undertaking a governmental function, Design incurs liability for any and all of the remedies in Minn.Stat. § 13.08. But the district court in its discretion did not award attorney fees, despite the ability to do so. On this record, we find no abuse of discretion in denying IBEW's request. *See WDSI*, 672 N.W.2d at 623 (holding where a party had a reasonable defense on the merits, made colorable arguments and the claims had a basis in fact, denial of attorney fees was appropriate).

### III.

In addition to the previous substantive appeals, IBEW filed a motion on March 5, 2008 to supplement the record in this consolidated appeal. IBEW seeks to amend the record with certified payroll records from the City of St. Cloud and Stearns County, including two projects involving Design as the contractor. Both Design and the City oppose IBEW's motion to supplement the record.

"The papers filed in the trial court, the exhibits, and the transcript of the proceedings, if any, shall constitute the record on appeal in all cases." Minn. R. Civ.App. P. 110.01. An appellate court may not base its decisions on matters outside the record on appeal and may not consider matters not produced and received in evidence below. *Thiele v. Stich*, 425 N.W.2d 580, 582–83 (Minn.1988). "However, when the evidence is documentary evidence of a conclusive nature (uncontroverted) which supports the result obtained in the lower court," this court may consider it. *Peterson v. Johnson*, 720 N.W.2d 833, 840 (Minn.App.2006) (quotation omitted). In general, new evidence may be introduced on appeal if it is (1) documentary; (2) essentially uncontroverted; and (3) is not offered in support of a reversal. *In re Risk Level Determination of C.M.*, 578 N.W.2d 391, 394 (Minn.App. 1998).

Here, IBEW proposes supplementing the record with payroll records similar to the ones requested by IBEW. But as Design argues, IBEW is attempting to impute motive by suggesting that Design did not object to the production of these supplemental records, and, therefore, Design has taken a legally unsupported stance here. Such an inference goes beyond the very limited basis for supplementing the record. In addition, supplemental information must be produced in support of the decision below. *In re C.M.*, 578 N.W.2d at 394. But IBEW proposes to supplement the record in the consolidated appeal and not merely to supplement the district court's grant of summary judgment in their favor. The inference suggested by this submission is that Design's position in denying the payroll records is unsubstantiated and illogical, which is exactly IBEW's argument for an award of

attorney fees. As this is an inference that would support reversal of the district court, we decline to supplement the record with such information. *See id.*

### DECISION

The data requested, with the exception of the home addresses, is public personnel data as defined by Minn.Stat. § 13.43 (2006). Because IBEW's ability to access public personnel data is not limited by Minn.Stat. § 13.43, subd. 6 (2006), the district court correctly granted summary judgment in favor of IBEW on that issue. But data concerning home addresses of Design's employees is not public personnel data, and the district court erred in its conclusion that Design must release that information. Instead, Design and the City must release the payroll records with home address information redacted from the data. There was no abuse of discretion in the district court's award of $500 in attorney fees nor was there an abuse of discretion in the refusal to award additional fees. In addition, we deny IBEW's motion to supplement the record.

**Affirmed in part and reversed in part.**