**NATIONAL COUNCIL ON TEACHER QUALITY, Respondent,**

v.

**MINNESOTA STATE COLLEGES & UNIVERSITIES, et al., Appellants,**

Inter Faculty Organization, intervenor, Respondent.

No. A12–2031.

Court of Appeals of Minnesota.

Aug. 5, 2013.

Daniel J. Herber, Nancy B. Hylden, Bruce G. Jones, Faegre Baker Daniels, LLP, Minneapolis, MN, for respondent.

Lori Swanson, Attorney General, James Patrick Barone, Assistant Attorney General, St. Paul, MN, for appellants.

Connie Howard, Inter Faculty Organization, St. Paul, MN, for intervenor.

David M. Aron, Anne F. Kisnik, Education Minnesota, St. Paul, MN, for amicus curiae.

Considered and decided by BJORKMAN, Presiding Judge; ROSS, Judge; and KIRK, Judge.

## OPINION

ROSS, Judge.

The National Council on Teacher Quality (NCTQ) requested copies of educational course syllabi maintained by the Minnesota State Colleges and Universities (MnSCU) under the force of the Minnesota Government Data Practices Act. MnSCU refused to provide the requested material, noting its faculty members' intellectual-property rights to it and citing the Federal Copyright Act. MnSCU appeals from the district court's order directing it to meet the NCTQ's data-practices request, arguing that requiring it to rely on the NCTQ's assertion that its use of the syllabi will qualify as "fair use" under the copyright act could subject MnSCU to copyright liability. Because MnSCU and its faculty do not contest the district court's holding that the NCTQ's proposed use constitutes fair use, we affirm.

## FACTS

In October 2011 the NCTQ, a nonprofit research and advocacy education-reform organization, requested copies of faculty-authored syllabi from MnSCU under the Minnesota Government Data Practices Act. MnSCU is a statutorily created organization of the state's colleges and universities and is governed by a board of trustees that is itself a state agency. Minn.Stat. §§ 136F.06, subds. 1, 2, 136F.65 (2012). MnSCU refused to honor the NCTQ's data request because it believed that providing the syllabi might allow the NCTQ to infringe on the intellectual-property rights of the faculty members who authored them, exposing MnSCU to liability under the Federal Copyright Act. It offered to allow the NCTQ to inspect the syllabi, but not to copy them. The NCTQ insisted that, "for its research to be meaningful," it needed to copy the documents rather than merely to view them, and it sued, urging the district court to compel MnSCU to meet its copy request. The Inter Faculty Organization, a teachers' union in the MnSCU system, intervened in support of MnSCU's position.

After discovery, MnSCU and the NCTQ each moved the district court for summary judgment. The district court granted summary judgment in part to the NCTQ. It determined from the undisputed facts that the NCTQ maintained the educational materials that it collected in a secure database accessible only to the "NCTQ supervisors and analysts and the NCTQ-approved outside researchers" who must sign confidentiality agreements before accessing the data. It concluded that although the syllabi were the intellectual property of MnSCU faculty-authors, the NCTQ's proposed use was "fair use" under the copyright act and that MnSCU could therefore not rely on that act to refuse to

follow the data practices act and disclose the syllabi. It ordered MnSCU to provide copies of the requested syllabi to the NCTQ under the data practices act notwithstanding the copyright act.

MnSCU appeals.

## ISSUE

Did the district court err by holding that the Minnesota Government Data Practices Act required MnSCU to provide copies of syllabi even though the syllabi are the copyrighted intellectual property of MnSCU's faculty-authors under the Federal Copyright Act?

## ANALYSIS

MnSCU asks us to reverse the district court's summary judgment decision. Summary judgment is proper if the admissible evidence shows that no genuine issue of material fact exists and that either party is entitled to judgment as a matter of law. Minn. R. Civ. P. 56.03. We review the district court's grant of summary judgment de novo, determining whether the district court properly applied the law and whether there are any issues of material fact that should preclude summary judgment. *Riverview Muir Doran, LLC v. JADT Dev. Co., LLC,* 790 N.W.2d 167, 170 (Minn.2010). We view any disputed evidence in the light most favorable to the party against whom summary judgment was granted. *Fabio v. Bellomo,* 504 N.W.2d 758, 761 (Minn.1993). But to survive summary judgment, a party must do more than merely raise a metaphysical

doubt or rest on averments. *DLH, Inc. v. Russ,* 566 N.W.2d 60, 71 (Minn.1997). The nonmoving party must instead present evidence for each element of its claim sufficient to allow reasonable persons to find in its favor. *Id.* When a district court's summary judgment is based on the application of the law to undisputed facts, we review it de novo. *Langston v. Wilson McShane Corp.,* 828 N.W.2d 109, 113 (Minn.2013). We also review the district court's interpretation of the data practices act de novo. *See, e.g., Star Tribune v. City of St. Paul,* 660 N.W.2d 821, 825 (Minn.App.2003).

■ When the facts on the issue are undisputed, the determination of whether a particular use also constitutes fair use under the copyright act is a question of law. *Harper & Row Publishers, Inc. v. Nation Enters.,* 471 U.S. 539, 560–61, 105 S.Ct. 2218, 2230–31, 85 L.Ed.2d 588 (1985). This standard is particularly significant here, because MnSCU argues specifically that the district court erred by ordering it to provide copies of its faculty-authors' intellectual property without their consent because providing the copies may expose MnSCU to copyright liability arising from the NCTQ's eventual, potential misuse. That is, MnSCU does *not* argue that, and we therefore do not consider whether, its copying of the documents and delivery to the NCTQ itself violates the copyright act irrespective of the NCTQ's possible, eventual misuse.[1]

■ MnSCU's argument as framed might be persuasive in other situations,

1. Amicus curiae Minnesota State College Faculty argues that MnSCU cannot allow the NCTQ even to view, let alone copy, the syllabi because allowing the viewing would constitute a violation of the owners' rights under the copyright act to "control access" by presenting a "public display" of their works. Although we do not address this argument because it was not presented by the parties to the district court, *see Thiele v. Stich,* 425 N.W.2d 580, 582 (Minn.1988), we observe that neither the text of the copyright act nor the cited caselaw offers any support for the notion that allowing a single party to view a copyrighted work constitutes a "public display" requiring the copyright owner's consent.

but not this one. MnSCU is correct that the data practices act must be read in conjunction with the copyright act. The data practices act mandates generally that any data "collected, created, received, maintained or disseminated by a government entity shall be public unless classified by statute ... or federal law[ ] as nonpublic." Minn.Stat. § 13.03, subd. 1 (2012). And it states that "comprehensive accessibility shall be allowed to researchers ... except as otherwise expressly provided by law." Id., subd. 2(b). The copyright act is such a law, and, under it, for our summary-judgment-review purposes, it is undisputed that the faculty authors who wrote the syllabi own the copyright to those works. See 17 U.S.C. § 201(a), (b) (2012). The state attorney general has also opined that federal prohibitions on copyright infringement can limit data access "to the extent ... that compliance with the MGDPA would compel an actual violation of the FCA." Op. Att'y Gen. 852 (Dec. 4, 1995); see also Billigmeier v. Cnty. of Hennepin, 428 N.W.2d 79, 82 (Minn.1988) ("[O]pinions of the attorney general are entitled to careful consideration by appellate courts, particularly when they are of long standing."). In sum, it is clear at least that the data practices act cannot be construed so as to require an agency or a state actor to violate the copyright act.

 But MnSCU's argument that the copyright act conflicts with its obligation to provide data under the data practices act is not compelling in this case given the district court's undisputed holding. The interplay between the copyright act and the data practices act is a matter of first impression in Minnesota. A federal law prevails over a conflicting state law. See U.S. Const. art. VI, cl. 2. But despite a theoretical conflict between two laws, when a state law can be interpreted in two ways,

one conflicting with federal law and one not, we will generally follow the interpretation that avoids the conflict. Meyer v. Nwokedi, 777 N.W.2d 218, 222 (Minn. 2010). We review de novo whether a federal law conflicts with and therefore preempts a state law. Angell v. Angell, 791 N.W.2d 530, 534 (Minn.2010).

The Federal Copyright Act provides copyright owners the "exclusive rights to do and to authorize" reproduction and distribution of their copyrighted works. 17 U.S.C. § 106(1), (3) (2012). But reproduction and distribution by a third party "for purposes such as criticism, comment, ... scholarship, or research[ ] is not an infringement of copyright;" it is instead a lawful and "fair use." 17 U.S.C. § 107 (2012). The district court considered the undisputed facts and held that NCTQ's proposed use is "fair use," and MnSCU does not contest this holding on appeal. The record supports this tacit concession. The NCTQ is a nonprofit corporation founded to promote research-based educational system reforms that may differ from existing teaching organizations' proposals. The uncontested, stated purposes of the NCTQ therefore mirror the qualifications for the copyright act's fair-use exception for "criticism, comment, ... scholarship, or research."

MnSCU argues, however, that it is barred by the data practices act from making any fair-use determination when assessing a request for data. MnSCU is correct that the data practices act does prohibit MnSCU from *requiring* a data requestor to justify its access request. See Minn.Stat. § 13.05, subd. 12 (2012). But the act does not expressly or implicitly prohibit an agency from considering a justification that the requestor has provided voluntarily. Although MnSCU did not request a fair-use justification, the NCTQ volunteered one anyway when it replied to

MnSCU's stated copyright-infringement concerns. These circumstances provide safe footing between the data-access mandate embodied in the data practices act and the fair-use-only provisions embodied in the copyright act. And this footing allows for a nonconflicting interpretation and application of federal and state law: although state law prohibits a data-practices respondent from demanding a fair-use justification, it does not prohibit it from recognizing that one exists. And at least when that justification is validated by a district court's unchallenged legal assessment that the third-party use *will* constitute fair use, as it has happened in this case, a government agency cannot refuse to provide the requested data relying only on its hypothetical concern that the third-party use might *not* constitute fair use.

■ This holding is also supported by the purpose underlying the data practices act. The purpose of the act is to facilitate public data accessibility. *See* Minn.Stat. § 13.01, subd. 3 (establishing a presumption that government data is public); *Prairie Island Indian Cmty. v. Minn. Dep't of Pub. Safety,* 658 N.W.2d 876, 883–84 (Minn.App.2003) (noting the legislature's "fundamental commitment to making the operations of our public institutions open to the public"). And we interpret statutes to give effect to the legislature's intent. Minn.Stat. § 645.16 (2012). Given the district court's reasoned conclusion that the third-party use here would constitute fair use, and given MnSCU's decision not to challenge that underlying holding with argument, and given MnSCU's failure to explain how the copyright act might expose it to liability for someone else's eventual copyright infringement, we have no reason to construe the data practices act restrictively here.

■ MnSCU contends that its own fair-use determination could be made only af-

ter an infringement has occurred. It maintains specifically that its reliance on the NCTQ's fair-use representation would not shield it from eventual copyright liability. Without disregarding the attorney general's opinion that data access should be withheld when providing data would constitute "an actual violation" of the copyright act, we do not read the data practices act as directing government respondents to withhold data based on a merely theoretical future violation, and again, MnSCU's brief does not explain how MnSCU could become liable for an eventual copyright violation by the NCTQ. This omission is especially significant in light of the Supreme Court's recognition that "[t]he [copyright act] does not expressly render anyone liable for infringement committed by another." *Sony Corp. of Am. v. Universal City Studios, Inc.,* 464 U.S. 417, 434, 104 S.Ct. 774, 785, 78 L.Ed.2d 574 (1984). As the district court observed, "If the MGDPA requires a Minnesota governmental entity, such as MnSCU, to release copies of public data, the person or entity receiving the data takes the information subject to the owner's FCA rights. All of the author's rights and remedies under the FCA are unimpeded."

■ MnSCU cites two opinions of the Information Policy Analysis Division of the Minnesota Department of Administration to argue that allowing the NCTQ to access the syllabi but refusing to make copies for it would "effectively balance the competing interests expressed in the MGDPA and the FCA and provide a workable rule for agencies to follow." The argument is not persuasive in light of our reason for affirming. But it also suffers from two flaws. First, although we give deference to administration department opinions, Minn.Stat. § 13.072, subds. 1(a), 2 (2012), we are not bound by them, *In re Admonition Issued in Panel File No. 99–42,* 621

N.W.2d 240, 244 (Minn.2001). And as outlined above, the circumstances here present no need to balance any *"competing interests."* Second, the written opinions of the attorney general take precedence over administration department opinions, Minn. Stat. § 13.072, subd. 1(f), and the attorney general has opined that government agencies "may not assert copyright ownership to deny members of the public their right to inspect *and copy* government data." Op. Att'y Gen. 852, at 2 (Dec. 4, 1995) (quotation omitted).

■ The Minnesota State College Faculty, a teacher's union in the MnSCU system, submits an amicus curiae brief that does challenge the district court's fair-use determination. But "[g]enerally, we do not decide issues raised by an amicus that are not raised by the litigants themselves," unless the issue is one that the court could raise *sua sponte*, such as the court's jurisdiction to decide the case. *League of Women Voters Minn. v. Ritchie*, 819 N.W.2d 636, 645 n. 7 (Minn.2012). We therefore decline to address the merits of the faculty's fair-use argument.

### DECISION

Because MnSCU has not provided any argument challenging the district court's holding that NCTQ's use will be fair use as a matter of law, and in any event it has not explained how it might become liable to the faculty-authors under the copyright act even if the NCTQ does infringe their copyrights, summary judgment enforcing the data practices act was appropriate.

**Affirmed.**